## EATON *v.* BROWN.

ASSIGNMENTS OF ERROR;  CONDITIONAL WILLS;  COSTS.

1. Where the court below dismissed a petition for the probate of a
   paper writing offered for probate as a will, upon a petition and
   answers thereto of the next of kin, and an appeal was taken
   from the order dismissing the petition, this court refused to
   consider an assignment of error that the lower court erred in
   holding that no testimony was admissible that certain words in

the will did not constitute a condition, where the record on appeal failed to show that the question of the admission of testimony to qualify or explain the paper writing was raised in the court below or was decided by it.

2. *Quære*, whether in view of the rule of evidence that oral testimony is not admissible to vary or contradict the terms of a written instrument, statements by a decedent that she had made her will and that it was among her papers and that she intended to leave her property to certain beneficiaries, could be received to show that a paper writing offered for probate was not a conditional will.

3. Where in a paper writing offered for probate as a will, a decedent said: "I am going on a journey and may not ever return. And if I do not this is my last request;" and then disposed of her estate, such words will be held to constitute a condition precedent to the operation of the writing as a will, and not merely an expression of the inducement operating upon the mind of the decedent to make the alleged will; and where it appears that the decedent returned safely from the journey referred to, the paper is properly rejected as her will when offered for probate.

4. This court will not disturb the action of the probate court in awarding costs against the petitioner in denying his petition for the probate of such a paper writing, where it does not appear that the question of costs was in any manner raised in the court below, as might have been done. The matter of costs is mainly in the discretion of the court below in probate proceedings, although it may be noticed incidentally on appeal; *following* Tuohy v. Hanlon, 18 App. D. C. 225.

No. 1225.  Submitted October 14, 1902.  Decided November 4, 1902.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia holding a Probate Court, dismissing a petition for the probate of a paper writing as a last will and testament.    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District of Columbia sitting in special term for Orphans' Court business, whereby probate was refused to a paper writing of a testamentary nature and costs were awarded against the proponent thereof.

The facts of the case, as they appear from the record, are these.  One Caroline Holley, formerly a resident of Bloom-

ingburgh, in the State of New York, but since the year 1883 a resident of the District of Columbia and employed here in the Treasury Department of the United States, died in this city on or about the 17th day of December, A. D. 1901, being then about the age of 70 years. After her death there was found among her papers a document of a testamentary nature, wholly in her own handwriting, and bearing date on August 31, 1901, and which in her own peculiar terms and somewhat incorrect spelling and language is as follows:

" WASHINGTON D. C. *Aug.* 31" /001

" I am going on a Journey and may, not ever return. And if I do not, this is my last request. The Mortgage on the King House, w-ich is in the possession of Mr H H Brown to go to the Methodist Church at Bloomingburgh    All the rest of My proper*day* both real and personal to My adopted Son L. B. Eaton of the life Saving Service, Treasury Department Washington D. C.    All I have is my *one* hard . earnings and *and* I propose to leave it to whom*e* I please.

(Signed)        CAROLINE HOLLEY."

It appears that on September 1, A. D. 1901, the said Caroline Holley took a journey to the Buffalo Exposition, which is presumed to be the journey referred to in the paper; that she went through Canada, came back through the Adirondacks, and then returned to Washington, where she resumed her occupation as a clerk in the Treasury Department, and died in this city, as already stated, on December 17, 1901.

There was no executor named in the alleged will; and L. B. Eaton, the appellant and the residuary legatee and devisee named therein, thereupon filed the paper in the office of the register of wills for this District, and also filed a petition for its admission to probate as a will merely of personal property, it being apparent that in the absence of attesting witnesses it could not be sustained as a will of real estate. In the appellant's petition it is averred that the decedent left personal property of the value of about $5,500, and an indefinite interest in some land in this city; that there was

no other paper of a testamentary nature found among her effects; and that, during the last two or three months of her life, she often spoke of having made her will, that it was among her papers, and that it showed how she wanted her property to go. It is alleged further that she had repeatedly stated during the last two or three years of her life that it was her intention to leave whatever property she possessed at the time of her death to the petitioner La Fayette B. Eaton and the Methodist Church at Bloomingburgh, in the State of New York, where, it is alleged, her body, after her death, was taken for burial.

The next of kin of the deceased appear to have been some cousins. Ten of them are mentioned in the appellant's petition to whom citations were issued. Two of these, the appellees here, filed caveats to the probate of the alleged will. Besides the usual grounds of fraud, undue influence, misrepresentation, and irregularity in the execution of the alleged will, and the further ground that Caroline Holley was not at the time of her death or at any time a resident of the District of Columbia, it was objected by the caveators that, as the alleged will was conditioned for its validity upon the happening of an event which never took place, namely, her failure to return from her then projected journey, the paper never went into effect as a will. There is no opinion of the learned justice who heard the cause in the court below to be found in the record before us; but it seems to be conceded on both sides that his decision was based on this last-mentioned objection, which he sustained. The decree rendered by him recites that the cause was heard " on the petition and amended petition of La Fayette B. Eaton, the caveat thereto (presumably meaning the caveat to the alleged will), the answer to said amended petition by Harrison H. Brown, one of the next of kin of said Caroline Holley, the stipulation of counsel filed in said cause (which was to the effect that the paper writing in question was in the handwriting of the deceased, and that it had been signed by her on August 31, 1901, and that on the 1st of September, 1901, she had gone on the journey mentioned, and had thereafter

returned to Washington and resumed her usual occupation, dying there, as stated, on December 17, 1901) and the other papers (which however do not appear in the record before us) ; and it refused probate and record to the paper writing in question, and dismissed the petition, with costs."

From this decree or decretal order the petitioner La Fayette B. Eaton has appealed.

*Mr. J. Altheus Johnson* and *Mr. Joseph A. Burkart* for the appellant:

1. The paper writing offered for probate is one which the decedent left as embodying her " last request " and is not one which she intended should be operative only on condition that she did not return from her Buffalo trip. The courts are slow to regard a testator as having hung his will upon a condition unless his intention to do so is plainly and unequivocally manifest. See *Finley* v. *King's Lessee,* 3 Pet. 377; *Bradford* v. *Bradford,* 4 Ky. L. Rep. 947, cited in *Likefield* v. *Likefield,* 82 Ky. 595; *French* v. *French,* 14 W. Va. 459; *In re George Thorne,* 4 Sw. & Tr. 36; *In re Dobson,* L. R., 1 P. & D. 88; *Ex parte Lindsay,* 2 Bradf. (N. Y.) 204; *Skipwith* v. *Cabell,* 19 Gratt. 758; *Cody* v. *Conly,* 27 Gratt. 313; *Thompson* v. *Connor,* 3 Bradf. (N. Y.) 366; Schouler on Wills (Ed. 1900), Sec. 290, p. 297.

2. Costs should not have been adjudged against the petitioner. *Tuohy* v. *Hanlon,* 18 App. D. C. 225.

*Mr. Rossa F. Downing* and *Mr. Thomas Watts* for the appellees:

1. The paper writing offered for probate is clearly and plainly absolutely conditional on its face and cannot be contradicted, added to, altered, or explained by parol testimony. Cases and authorities which have held similar documents absolutely conditional are: *Parsons* v. *Lanoe,* 1 Ves. Sr. 190, and Ambler, 557; *Sinclair* v. *Hone,* 6 Ves. Jr. 607; *Goods of Winn,* 2 Sw. & Tr. 47; *Roberts* v. *Roberts,* 8 Jur. N. S.

220; *Goods of John Porter,* L. R., 2 P. & D. 22; *Goods of Robinson,* L. R., 2 P. & D. 171; *Lindsay* v. *Lindsay,* L. R., 2 P. & D. 449; *Goods of Ward,* 4 Hagg. 179; *Todd's Will,* 2 W. & S. (Pa.) 145; *Morrow's Appeal,* 116 Pa. St. 440; *Wagner* v. *McDonald,* 2 Har. & J. 346; *Maxwell* v. *Maxwell,* 2 Metc. (Ky.) 101; *Daugherty* v. *Daugherty,* 4 Metc. (Ky.) 25; *Massie* v. *Griffith,* 2 Metc. (Ky.) 364; *Robnett et al.* v. *Ashlock,* 49 Mo. 171; *Magee* v. *McNeill,* 41 Miss. 17; *Bradford* v. *Bradford,* 4 Ky. L. Rep. 947; *Likefield* v. *Likefield,* 82 Ky. 590; *French* v. *French,* 14 W. Va. 459; *In re George Thorne,* 4 Sw. & Tr. 36; *Dobson's Case,* L. R., 1 P. & D. 88; *Ex parte Lindsay,* 2 Bradf. Sur. (N. Y.) 204; *Skipwith* v. *Cabell,* 19 Gratt. 758; *Cody* v. *Conly,* 27 Gratt. 313; *Thompson* v. *Connor,* 3 Bradf. 366; Abert's Compiled Statutes, p. 562, Sec. 28 (29 Car. II, chap. 3, Sec. 22); *Kelleher* v. *Kernan,* 60 Md. 440; 1 Jarman (R. & T.'s ed.), 33; Jarman on Wills, Vol. 1, p. 400; *Stevens* v. *Vancleve,* 4 Wash. C. C. (U. S.) 264; Schouler on Wills (Ed. 1900), Sec. 290, p. 297.

2. It is too late for the appellant to raise the question of costs now. This case is different from that of *Tuohy* v. *Hanlon,* 18 App. D. C. 225, for the reason that in that case the will was in due form with nothing on its face to show that it was not a will, while here, as a matter of law, this paper is not a will and the appellant is presumed to know it.

Mr. Justice MORRIS delivered the opinion of the Court:

The assignments of error are three in number:

(1) That it was error to hold the words in the paper concerning a journey as constituting a condition precedent to the operation of the writing as a will, instead of being merely an expression of the inducement for making the will.

(2) In holding that no testimony was admissible to show that these words did not constitute a condition, and that the paper was of a testamentary character.

(3) That it was error to adjudge costs against the petitioner Eaton individually.

1. The second of these assignments of error we must dispose of summarily with the statement that there is nothing in the record before us to show that the question of the admission of testimony to qualify or explain the paper was raised in the court below or was decided by it. There is no offer in the record to adduce such testimony. The only reference which we find to anything of the kind is the statement contained in the amended petition to the effect that, during the last two or three months of her life, the deceased had often spoken of having made her will and that it was among her papers; and that, during the last two or three years of her life, she had often spoken of its being her intention to leave her property to the appellant Eaton and to the Methodist Church at Bloomingburgh. But these allegations are all denied by the answer; and, as we have said, there was no offer of proof to sustain them. Moreover, it is not apparent to us how, in the face of the elementary rule of evidence that oral testimony is not admissible to vary or contradict the terms of a written instrument, any such statements as are here indicated could be received to explain away and to nullify the express language of the paper writing before the court.

2. The first assignment of error brings up for review the only substantial question in the case — whether the paper writing in question became a nullity by reason of the failure of the apparent condition upon which it was to become effective; or whether what appears to be a condition was in fact and in legal intendment only the expression of the inducement operating upon the mind of the writer to make the alleged will. And this question we think was rightly determined by the court below by the decree which it made.

Undoubtedly unless we are prepared to repudiate the overwhelming weight of authority and to hold that there can be no such thing as a conditional will, that is, an instrument of writing limited to go into effect as a testamentary disposition of property only upon the happening of some specified contingency, and not otherwise, the document in this case purporting to be the will of the deceased ·Caroline Holley

cannot be sustained as now valid and operative. If the words used in it as a preamble do not constitute a condition upon which the document is to become effective, we find it impossible say what words could have been used for the purpose. The statement is that, if she does not return from the journey on which she was then about to enter, the paper writing was then to be taken as her last request; that is, as her last will and testament. The converse of the proposition is, that, if she did return, then it was not to be her last will and testament. Language could not well be plainer than this. And as she did return, it is very clear that the paper thereafter ceased to have any effect as a testamentary disposition of her estate.

It is open to us, of course, to speculate that she did not mean this, but something directly the reverse of it. But wills cannot be established upon mere speculation that parties did not mean what they said. It is difficult to see why such conditions should be inserted in papers of a testamentary character, when the same result could be had by the execution of another will upon the determination of the specified contingency, or by the destruction or cancellation of the paper. But it is idle to speculate on the actuating motives of parties in their testamentary dispositions. Nowhere, perhaps, are the vagaries of human nature more distinctly evidenced than in the matter and the manner of wills and testaments, especially when these documents are written by the parties themselves, or by persons ignorant of the law. It is often difficult to determine what they mean, or to deduce a coherent and rational purpose from them. But the difficulty would be increased a thousand fold, if courts allowed themselves to go outside of the written instruments, opened the door to oral testimony, and established wills upon speculation as to what was the real intention of the parties irrespective of the written document. No doubt that real intention is sometimes frustrated by the application of this rule of construction. But it was said long ago in this connection — *voluit, sed non dixit* — he may have so intended, but he has not said so — and we are bound by the writing.

The conclusion reached by the court below is sanctioned by the apparently unanimous current of legal authority in England, and by the great preponderance of decision in America. With great industry, learning and ingenuity the principal cases on the subject have been cited and considered in the brief filed on behalf of the appellees in this case. Among them are *Parsons* v. *Lanoe,* 1 Ves. Sr. 190; *Sinclair* v. *Hone,* 6 Ves. Jr. 607; *In re Winn,* 2 P. & D. 47; *Roberts* v. *Roberts,* 8 Jur. (N. S.) 220; *In re John Porter,* L. R., 2 P. & D. 22; *In re Robinson,* L. R., 2 P. & D. 171; *Lindsay* v. *Lindsay,* L. R., 2 P. & D. 449; *In re Ward,* 4 Haggard, 176; *In re Todd,* 2 Watts & Sergeant (Pa.) 145; *Morrow's Appeal,* 116 Pa. St. 440; *Wagner* v. *McDonald,* 2 Har. & J. 346; *Maxwell* v. *Maxwell,* 3 Metc. (Ky.) 101; *Dougherty* v. *Dougherty,* 4 Metc. (Ky.) 25; *Robnett* v. *Ashlock,* 49 Mo. 171; *Magee* v. *McNeill,* 41 Miss. 17. See, also, Jarman on Wills, Vol. I, p. 17; and Schouler on Wills, p. 285.

In the leading case of *Parsons* v. *Lanoe,* 1 Ves. Sr. 190, before Lord Chancellor Hardwicke, the words used were almost identical in their import with those used in the present case. They were: " *In case* I should die before I return from the journey I intend, God willing, shortly to undertake for Ireland, my will and desire is, etc., etc." It appeared also in that case, somewhat similar to the present, that the testator in his last illness had told some of the persons around him that his will would be found in a certain designated place, where the paper offered for probate was subsequently found, and that he had frequently alluded to it as his will. He returned from Ireland, and died some time afterwards. Lord Hardwicke, in disposing of the case, said:

" I am of opinion that the disposition is a contingent provision, and I think no part was intended to take effect, except he died before his return."

And he held also that oral testimony was not admissible to explain or vary the words of the writing.

In the case *In re John Porter,* L. R., 2 P. & D. 22, where the words used were: " Should, anything unfortunately happen to me while abroad, etc., etc.," and which were held to make the will conditional, the distinction was pointed out between words of condition and words which simply express the reason and the occasion for making the will; and it was stated that, if by any reasonable interpretation, the language can be construed as referring to the apprehended occurrence as merely the reason for making the will, it should be so construed, and the will should not be regarded as conditional. And the current of modern authority, as claimed on behalf of the appellant, is strongly in favor of this proposition. In pursuance of this view the cases were decided of *Bradford* v. *Bradford,* 4 Ky. L. Rep. 947; *Likefield* v. *Likefield,* 82 Ky. 589; *French* v. *French,* 14 W. Va. 458; *In re George Thorne,* 4 Sw. & Tr. 36; *In re Dobson,* L. R., 1 P. & D. 88; *In re Lindsay,* 2 Bradf. (N. Y.) 204; *Thompson* v. *Connor,* 3 Bradf. (N. Y.) 366; *Skipwith* v. *Cabell,* 19 Gratt. 758; *Cody* v. *Conly,* 27 Gratt. 313. Of these probably the cases of *Likefield* v. *Likefield* and *French* v. *French* are the strongest in support of the appellant's contention.

In the case of *Likefield* v. *Likefield* the Court of Appeals of the State of Kentucky had before it a testamentary paper, which was in these words:

" If any accident should happen to me that I die from home, my wife Julia Ann Likefield shall have everything I possess, the house and lots and money that is due to me, and for her to hold it as her own."

And it held: " The rule is that courts will not incline to regard a will as conditional if it can reasonably be held that the maker was simply expressing his inducement to make it, however inaccurate the language may be for that purpose, if strictly construed; and unless the words clearly show that it was intended to be temporary or contingent, it will be upheld. * * * While the word *if* is an apt one to express a condition, yet the language used is so general in character that it shows that the testator intended it as words of *inducement*

to the making of the will only, and not that the disposition of his property should depend merely upon the place of his death."

In the case of *French* v. *French* the words used by the testator were: "Let all men know hereby, that if I·get drowned this morning, March 7, 1872, I bequeath all my property, personal and real, to my beloved wife, Florence." He was about to go on a journey on the day mentioned, which required the fording of a swollen stream near his place of residence, and from which his wife tried to dissuade him. He accomplished the journey in safety, and did not die until nearly three years afterwards. The writing specified was then presented for probate as his will; and the Court of Appeals of the State of West Virginia said in regard to it:

" It seems that it is now an established principle that, while a person may make a conditional will, his intention to do so must appear clearly. The question is, whether the contingency is referred to as the reason or the occasion for making the disposition, or as the condition upon which the disposition is to become operative."

And further on it said: " The language can be reasonably interpreted and construed to mean that he refers to the calamity and the time during which it may happen as the reason for making said paper writing, and not as the condition upon which the disposition of the property is to become operative; and the will should be interpreted as though it read,— ' Lest I get drowned this morning; or lest I die this morning.' "

These cases have not received unqualified approval. The cases of *French* v. *French, In re Dobson,* and *In re Martin* were cited by the Court of Appeals of Maryland in the case of *Kelleher* v. *Kerman,* 60 Md. 440, 446, 447, where it was said of them: " Without committing ourselves to full approval of these several decisions under their respective circumstances and language employed, we refer to them as vastly stronger cases for holding the will contingent than this one, and where they were held not contingent." In the case of *Kelleher* v. *Kerman* it was significantly remarked that the

paper writing there at issue " evidently embodied what the testator wanted *in any event* to be done with his property." The cases of *Likefield* v. *Likefield* and *French* v. *French* were cases in which the wills were made by husbands in favor of their wives, a disposition which they would probably have made of their respective estates in any event; and it is evident in both cases that the testator contemplated the propriety of making wills in view of the possible nearness of death, and did not intend the testamentary disposition to be specifically contingent upon the issue of the journeys upon which they were at the time about to enter.

In the case now before us there is no specific reference whatever to the matter of death, except by implication. Neither dying nor death is mentioned. The sole statement is that the testatrix might never return from the journey which she was about to undertake. It is quite consistent with her circumstances that if she did return, she might have made some other disposition of her estate. At all events we find nothing in the words which she used which would remove them from the category of conditional limitations.

It may well be that in all such cases the parties had no actual intention to make their bequests and devises in the shape of conditional limitations; and that all such conditional limitations should be disregarded, or construed merely as statements of the inducement to the making of the wills at the time, if we would give effect to the real intention of the testators. But, in view of the authorities on the subject, and in view of the danger of wandering beyond the letter of the will in order to seek the intention, we are constrained to hold that, in consequence of the words of the preamble and the failure of the contingency on which the testamentary paper in question was to become operative, that paper is now of no effect. And we think that the court below was right in so holding.

3. An assignment of error is based upon the adjudication of costs against the appellant. But it does not appear that the question was in any manner raised in the court below, as might well have been done. For this reason, and because

the matter of costs is mainly in the discretion of the court below in proceedings in the probate court, although it may be noticed incidentally on appeal (*Canter* v. *Insurance Co.,* 3 Pet. 307; *United States* v. *The Malek Adhel,* 2 How. 210; *Tuohy* v. *Hanlon,* 18 App. D. C. 225, 230, and cases there cited), we cannot assume that the decision was erroneous in this regard, when we find no other reason to disturb it. Nor would we have deemed it proper to disturb it, if the decision had been the other way, and the court had awarded the costs to be paid out of the estate.

We find no error in the decision of the probate court in the premises; and it follows, therefore, that the order appealed from should be *affirmed, with costs. And it is so ordered.*