G. W. VICKERY AND OTHERS v. DAVID L. HOBBS.

The case of Parker v. Parker, (10 Tex. R. 83,) cited and approved.

In a petition to set aside a will, an allegation that fraud was practised by the defendant who wrote the will, in failing to embody in it as directed by the testator, the condition that it should be valid only in the event that the testator died during his then sickness ; but should he recover therefrom it should be void ; and in reading it to the testator before he signed it, as containing that condition, discloses a sufficient cause of action.

If a will is limited as to its operation by conditions by which it is defeated before the death of the party making it, it can have no effect as a will unless by force of a re-publication by the testator.

Where a party making a will under such circumstances recovers from his then sickness and the will remained in his possession until his death without being destroyed or expressly revoked, such fact does not operate as a re-publication.

If the deceased signed the paper supposing it to contain the condition mentioned he was deceived, and no subsequent declaration of his to the effect

that he was satisfied with the will and that it should stand, operates to make it his will.

If, however, the will was written as intended by the testator and he knew its contents when he signed it, oral testimony of an understanding outside of it cannot be received to contradict or vary its terms.

Where a will is written by one who takes a benefit under it, that is a circumstance to excite stricter scrutiny and require stricter proof, not only of volition and capacity, but that the testator knew the contents of the paper he was signing and that no fraud, deception or imposition was practiced upon him.

Where the petition alleged a particular ground for setting aside the will, and on the trial another fact came out in evidence distinct and different from that alleged in the petition which was by the Court in its charge submitted to the jury as a controlling fact to determine their verdict, it was error.


Appeal from Wood. Tried below before Hon. W. W. Morris.

Suit by appellee to set aside the will of Voctary Hobbs, his son.

The petition alleged that Albert Vickery, one of the defendants, and a beneficiary under the will, was the writer of it. That it was prepared while the said Voctary Hobbs was in bed sick, and was read to him as containing a clause that it should be void if he survived that spell of sickness, when in fact he had not so written it, although he had been directed so to do. That the said Voctary did not die during that spell of sickness, but recovered and lived eight or ten months afterwards.

The appellant demurred to the petition ; his demurrer does not appear by the record to have been disposed of by the Court, although his counsel in argument assumes it to have been overruled. He also pleaded the judgment of the County Court admitting the will to probate and denied all and singular, &c. On the trial the appellee proved that he was the father of Voctary Hobbs. The remainder of the testimony is contained in the Opinion. Various exceptions were taken to the evidence in the progress of the trial, but inasmuch as

the Opinion proceeds on other grounds, it is not deemed important to notice them. There was a verdict and judgment for the plaintiff, and a motion for new trial was overruled.

*Selman & Hubbard*, for appellants.

*S. M. Hyde*, for appellee.

WHEELER, J. The authority of the Court to entertain this suit is maintained by the decision in the case of Parker v. Parker, (10 Tex. R. 83,) where the question was fully considered and determined in favor of the jurisdiction.

The ground on which the plaintiff, in his petition, seeks to revoke the probate and set aside the will is fraud practiced upon the testator by the defendant who wrote the will, in failing to embody in it as directed by the testator, the condition that it should be valid only in the event that the testator died during his then sickness, but should he recover therefrom it should be void; and in reading it to the testator, before signing, as containing that condition.

It is insisted that the petition is insufficient, and that there is no ground shown for setting aside the will, because it was revocable by the testator at pleasure. It is true the testator might have revoked or cancelled the will, but the belief that it was by its terms inoperative upon his recovery, may have been the reason why he omitted to do so.

As a will does not take effect until the death of the testator, and it requires that event to call it into operation, if it is limited as to its operation by conditions by which it is defeated before the death of the party making it, it is difficult to understand how it can have effect as a will, unless by force of a re-publication by the testator. If the will was to have taken effect only upon condition that Hobbs died of his then sickness, and he did not die but recovered, it would seem that the

Vickery v. Hobbs.

operation of the will was defeated by the failure of the contingency upon the happening of which it was to have taken effect. And to this effect are the authorities. In the case of Todd's will, (2 Watts and Serg. 145,) a similar condition was held to limit and defeat the operation of the will, though it was not expressed, as in this case, that upon failure of the contingency the will should be void. There the testator, in contemplation of a journey, left a testamentary paper, with his intended executor, commencing thus : " My wish, desire and intention now is, that if I should not return (which I will, no preventing Providence) what I own shall be divided as follows :" proceeding to make a disposition of his property. The Court thought it evident that this arrangement of his affairs was intended to be provisional, and not to serve in the event of his death at home ; and he having returned and died in about a month thereafter, the Court held that the instrument ought not to be admitted to probate.

On that occasion Chief Justice Gibson said : " No text writer seems to have distinguished between a condition attached to a particular testamentary disposition, and a condition attached to the operation of the instrument. But in Parsons v. Lance, (1 Ves. Lr. 191,) Lord Hardwick said without hesitation that he would not require an authority for such a distinction, and that a paper subject to a condition ought not to be admitted to probate after failure of the contingency on the happening of which it was to have taken effect. Why should it be proved as a will, when it could not have the effect of one ? In that case the words, " I make my will in manner following : If I die before my return from my journey to Ireland," &c., were held to make the whole contingent, chiefly, it would seem, because the words " in manner" were deemed equivalent to the words " on condition." And in Sinclair v. Howe, (6 Ves. 608,) where the words were, " In case I die before I rejoin my beloved wife," it was thought the whole codicil was intended to depend on that event, be-

cause the whole property was devised to the wife, except a portion of it dependent on her interest." But the intention, it was said, to make the operation of the paper eventual, was not near so apparent in either of those cases as in the case then before the Court. In the present case, had the condition been inserted, the intention would not have been left to construction, but would have been express and clear beyond question.

It must have been respected; and the consequence would be that the instrument could not have taken effect as a will. The decision of the case, therefore, depended on the question whether, when the deceased signed the paper he supposed it contained the condition mentioned. There was the testimony of a witness positively to the fact that it was read to Hobbs as containing the condition; and another testified to his declarations, and there were other circumstances in evidence tending to support the conclusion that he must have so understood it. One witness, however, testified that it was not in the will, but was the understanding, that if Hobbs did not die in that spell of sickness the will should be void. If the witness meant to say that it was not in the will as read to Hobbs, and he signed knowing it was not, his testimony is opposed to that of the first witness. The one gave his testimony when the will was admitted to probate; the other from his recollection some years later. The weight to be given to their respective statements was for the jury, aided by the other evidence in the case. If the will was written as intended by Hobbs and he knew its contents when he signed it, I apprehend that oral testimony of an understanding outside of it, could not be received to contradict or vary its terms. But it is to be observed that where, as in this case, a will is written by one who takes a benefit under it, that is a circumstance to excite stricter scrutiny, and require stricter proof not only of volition and capacity, but that the testator knew the contents of the paper he was signing, and that no fraud, deception

or imposition was practiced upon him. It ought clearly and satisfactorily to appear that he was not imposed upon, but that he knew what he was doing, was fully apprised of the contents and effect of the instrument and the dispositions he was making when he signed it. (1 Jarman on Wills, 40 to 45 *et seq.* and notes.) If the deceased was deceived at the time of signing, and supposed the writing contained the condition in question, no subsequent declarations of his, such as testified to by some of the witnesses, that he was satisfied with the will and it should stand, could have the effect to make it his will. Being inoperative, nothing short of a re-publication could impart to it vitality so that his death would call it into operation. The only effect which those declarations could have would be as circumstances tending in some degree, perhaps, to throw light on the question of his knowledge of the contents of the will at the time of signing.

The question of imposition or deception, and knowledge, on the part of the testator, of the contents of the writing, was for the jury under the evidence ; and there would be no ground of reversal had not the Court erred in the charge delivered, to the effect that if the will was read to Hobbs as providing two steers to defray burial expenses, they should find for the plaintiff. There was no such ground of avoidance of the will alleged in the petition ; nor was there any charge of imposition or fraud, except in the one particular of the alleged condition. There was, therefore, no averment in support of which the matter of the two steers might have been submitted as a circumstance to be considered by the jury. Nor was it submitted as a circumstance merely, but as a controlling fact, which should determine their verdict if the will was read to Hobbs as containing the provision. All the witnesses who spoke to the fact of hearing the will read at the time of signing, testified that it did contain, or was read as containing such a provision. The jury could not discredit it ; and under the charge of the Court as to its effect, they had no alterna-

tive, but were bound to find for the plaintiff whatever their opinion might have been upon the real question at issue in the case. What influence the circumstance of reading the will as containing that provision might have had under such averments as to have rendered it legally admissible, it is not necessary to determine ; considered by itself, it would seem, at most, but a slight circumstance to show fraud and imposition. It will suffice to say that under the averments of the petition it was not entitled to the effect ascribed to it by the charge of the Court ; and as this error in the charge may have controlled the verdict, it will require a reversal of the judgment. If the Court deemed that matter of such consequence, we cannot say that it had not equal influence on the minds of the jury, looking, as they must, to the Court for the law of the case. The judgment must be reversed and the cause remanded.

Reversed and remanded.