## MARY E. PHELPS ET AL. v. MICHAEL H. ASHTON.

Our probate law declares, that any person who considers himself aggrieved by any decision, order, decree, or judgment of the county court may appeal to the district court, and have the case tried *de novo.* (Paschal's Dig., Arts. 1384, 1460, Notes 523, 560.)

The effect of an appeal is to remove the cause from the county to the district court, and the cause will be tried there upon the record and the proof of such facts as will enable the district court to form a correct judgment in revising the proceedings of the county court. (Paschal's Dig., Art. 1460, Note 560.)

Testamentary executors, or any other person interested in the estate of the deceased, may apply for the probate of the will and grant of letters, and any persons interested may file opposition, and letters will be granted to such testamentary executors as qualify. (Paschal's Dig., Arts. 1266–1268.)

Upon an appeal, by an interested party, the case is to be tried *de novo* in the district court, where all persons interested have the right to be heard.

A will made on the eve of absence, which declares the testator's wish, "should I die while absent," is contingent, and does not take effect if the party die at home, or after his return from the intended absence.

APPEAL from Shelby.    The case was tried before Hon. RICHARD S. WALKER, one of the district judges.

The material facts relied on by appellant are as follows:

H. C. Ashton, Sr., on March 18, 1861, executed an instrument in writing, intending to dispose of his property after his death upon a certain contingency.    The contingency is expressed in these words: "I, H. C. Ashton, Sr., being on the eve of leaving home for an indefinite time, and not knowing what Providence may ordain during my absence, do make and will this request in case of my death while absent."    In this instrument the appellants, the grandchildren of H. C. Ashton, were disinherited, and his reasons given for disinheriting them.    Three days afterwards said H. C. Ashton made another instrument, in which he says: "For satisfactory reasons of my own and my beloved wife, I annex this codicil to the foregoing, to have and to bear as full effect as if it had been placed in the body of the original pages 1 and 2, to annul so much of the foregoing as regards the disinheritance of P. W. Harvey's children by my daughter Lucy Harvey, deceased."    He therein willed to appellants by name a small legacy.    He died on the first Monday in August, 1861, in Shelby county, Texas. On the day before his death the witness Carrew met Ashton at Logansport, about seven miles from his [Ashton's] house, on the way, he and wife, to visit Carrew, who lived six miles from Logansport.    Next morning deceased went across the river to vote, and shortly afterwards witness heard that deceased was shot, and went to him.    Found deceased lying on a mattress, who told him to look in his desk and he would find his will, which he wanted his wife to carry out.

The will spoken of by deceased is the paper now in controversy.

At the March term, 1862, of the county court, C. W. Ashton filed his petition for the probate of the will and for letters of executorship. At the same term the appellants filed their opposition, and at said term the county court refused to probate the will and to issue letters of executorship, from which judgment C. W. Ashton gave notice of appeal, and filed his appeal bond 31st March, 1862, and died before any judgment upon his appeal. On the 23d March, 1863, Michael H. Ashton filed his petition in the district court, praying to be allowed to prosecute the appeal taken by C. W. Ashton for the establishment of the will, and also for the appointment of said Michael as executor. On the same day A. W. O. Hicks was appointed guardian, *ad litem,* for the minors, appellants in this court. At the same term of the court the appellants filed their exceptions to the application of said Michael, which exceptions were overruled by the court, and said Michael permitted to prosecute the appeal, and the court gave judgment in favor of the validity of the will, and ordered the county court to issue letters of executorship to said Michael, and gave judgment for costs against the appellants, and ordered execution to issue. From this judgment the appellants appealed.

*A. W. O. Hicks,* for appellants.—The words of the document have a plain sense, and should be taken to be the intent of the deceased, and his intent to be what the words say. (8 Bac. Ab., 482, tit. Wills and Testaments, G.) Where A made his will and said, lest it should please God that he should not return, devised, &c. He returned and died without changing his will. *Held,* that the disposition was merely contingent, and that no part of the will was to take effect but on the contingency of his return. (8 Bac. Ab., 482; Vickey v. Hobbs, 21 Tex., 570; Parsons v. Lance, 1 Ves., 191; Sinclair v. Howe, 6 Ves., 608.)

*L. F. Casey*, for appellee.

SMITH, J.—Any person who may consider himself aggrieved by any decision, order, decree, or judgment of the county court may appeal to the district court therefrom, (O. & W. Dig., Art. 830,) [Paschal's Dig., Art. 1384, Note 523;] and the cause will be there tried *de novo*. (Hart. Dig., Art. 718,) [Paschal's Dig., Art. 1464, Note 562.]

The effect of the appeal is to remove the cause to the district court for a new trial, and the parties will there stand in the same relation to each other. (Hall v. Claiborne, Austin term, 1863,) [27 Tex., 217.] And the cause will be tried there upon the record and the proof of such facts as may enable the district court to form a correct judgment in revising the proceedings of the county court. (10 Tex., 1863.)

The testamentary executor, or any other person interested in the estate of the deceased, may apply for the probate of the will and grant of letters. (O. & W. Dig., Art. 702,) [Paschal's Dig., Art. 1266.] And any person interested, at any time before the trial, may file opposition, &c. (O. & W. Dig., Art. 703,) [Paschal's Dig., Art. 1267.] And when the will shall have been probated the court will grant letters to the testamentary executors, or such of them as may qualify, &c. (O. & W. Dig., 704,) [Paschal's Dig., Art. 1268.] The court is not directed to grant letters to the person who may apply for the probate of the will. It will hardly be contended that Michael Ashton could not have become a party plaintiff or applicant in the county court at any time before the trial in that court. And, as the appeal operated to remove the whole case to the district court for trial *de novo*, every person interested in the estate had a right to be made a party to the proceedings and be heard, or it must be admitted that the case does not stand in the district court as it did in the county court to be tried *de novo*, that is, anew, and as in that court. It

would only be revisory, and only as between those who might join formally in the appeal; the contrary of which has been decided at this term at Tyler in the case of Davenport v. Hervey & Heard, [*ante*, 329;] and hence we must conclude that there was no error in permitting Michael Ashton to proceed with the cause in his name, or in the extension of letters to him as an executor of the will.

The appellants contend that the paper offered was not the will of the deceased; that it was contingent, and depending upon the happening of an event upon which its vitality as a will depended, and that it was not proved that such event did in fact occur.

The will reads as follows on that point: "Know all men by these presents that I, H. C. Ashton, Sr., being on the eve of leaving home for an indefinite time, and not knowing what Providence may ordain during my absence, do make and will this request in case of my death while absent." &c.

It is quite apparent that this was a contingent will, depending for its validity as a will upon the happening of the event named, his "death while absent," at that leaving of home. And if he did not die on that trip, it is quite clear that the instrument could not take effect as his will. (2 Watts & Serg., 145; 6 Ves., 608; 1 Ves., Sr., 109; 16 Tex., 425.)

After a trial in the district court, the will was established and ordered to be admitted to record in the county court, and letters to issue to Michael Ashton.

If all the facts given in evidence in the court below were sent up in the statement, we might then revise the action of the court on the question, whether the contingency had occurred upon which the will was to take effect, (his "death while absent.") The action of the district court is presumed to be correct, until the contestant presents the cause here and places his finger upon the error; and if the objec-

tion be the want of evidence to support the verdict and judgment, "a clear and accurate statement or bill of the facts given in evidence on the trial of the cause" must be secured and sent up with the record, (O. & W. Dig., Art. 548,) or the presumption will be here indulged that every material allegation of the pleadings was established by full and legal testimony. It should be made to appear, at least inferentially, that the statement contains all the facts given in evidence. (1 Tex., 476.)

The statement here sent up with the record does not pretend to embrace all the facts given in evidence on the trial below, but only purports to give the substance of the evidence of the witness William Carrew, and, for aught that appears, there may have been a number of other witnesses who testified in the cause, and fully supported every point necessary for the plaintiff below to make out for the success of his cause.

We do not believe there is anything on the face of the will to show it had not been completed for the want of a subscribing witness. The assertion is made that the handwriting can be proved without subscribing witnesses.

There being no error apparent, the judgment below is

AFFIRMED.